UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

ALEXIS K.[1],                                    )
                                                 )
                        Plaintiff,               )
                                                 )
            v.                                   )   Case No. 2:20-cv-411
                                                 )
KILOLO KIJAKAZI,                                 )
Commissioner of Social Security,                 )
                                                 )
                        Defendant.               )

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the

Commissioner filed by the plaintiff, Alexis K., on November 16, 2020.  For the following

reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Alexis K., filed applications for child's insurance benefits based on

disability, Disability Insurance Benefits, and Supplemental Security Income, alleging a disability

onset date of May 19, 2018.  (Tr. 15).  The Disability Determination Bureau denied Alexis K.'s

applications initially on November 28, 2018, and again upon reconsideration on March 11, 2019.

(Tr. 97, 107, 117, 128, 141, 154).  Alexis K. subsequently filed a timely request for a hearing on

March 28, 2019.  (Tr. 190-91).  A hearing was held on December 5, 2019, before Administrative

Law Judge (ALJ) Leeanne Foster.  (Tr. 31). Vocational Expert (VE) Deana Olah also appeared at

the hearing.  (Tr. 31).   The ALJ issued an unfavorable decision on December 29, 2019.  (Tr. 15-

25).  The Appeals Council denied review making the ALJ's decision the final decision of the

Commissioner.  (Tr. 1-6).

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.

First, the ALJ found that Alexis K. met the insured status requirements of the Security

Act through June 30, 2020. (Tr. 18). The ALJ found that Alexis K. had not attained age 22 as of

May 19, 2018, the alleged onset date. (Tr. 18). At step one of the five-step sequential analysis

for determining whether an individual is disabled, the ALJ found that Alexis K. had not engaged

in substantial activity since May 19, 2018, the alleged onset date. (Tr. 18).

At step two, the ALJ determined that Alexis K. had the severe impairments of

mucopolysaccharidosis (MPS) type VI with corneal clouding; degenerative disc disease of the

cervical spine; history of carpal tunnel syndrome (CTS); and major depressive disorder. (Tr. 18).

The ALJ found that the above medically determinable impairments significantly limited Alexis

K.'s ability to perform basic work activities. (Tr. 18). Alexis K. also alleged disability due to

valve disease. (Tr. 18). However, the ALJ indicated that the impairment caused no more than

minimal limitations on her ability to engage in basic work activities, and therefore it was

considered non-severe. (Tr. 18).

At step three, the ALJ concluded that Alexis K. did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 18-19). The ALJ found that no

medical evidence indicated diagnostic findings that satisfied any listed impairment. (Tr. 18-19).

After consideration of the entire record, the ALJ then assessed Alexis K.'s residual

functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform
> sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a)
> except that the claimant can climb ladders, ropes or scaffolds but
> can occasionally climb ramps and stairs; and occasionally balance,
> stoop or [crouch] but never kneel or crawl. The claimant can
> frequently handle and finger with the bilateral upper extremities.
> The claimant can never drive a motor vehicle at night. The claimant
> can avoid ordinary hazards in the workplace, such as boxes on the

> floor, doors[] ajar, and approaching people or vehicles. The
> claimant is limited to understanding, remembering, and carrying out
> simple instructions and can make simple work-related decisions.
> The claimant can tolerate occasional changes in the work setting.
> The claimant can tolerate occasional interaction with coworkers,
> supervisors, and the public. The claimant must be able to alternate
> between sitting and standing every 20-30 minutes, but can remain
> on task.

(Tr. 20). After considering the evidence, the ALJ found that Alexis K.'s medically determinable

impairments reasonably could have been expected to cause the alleged symptoms. (Tr. 22).

However, she found that the medical record did not document sufficient objective medical

evidence to substantiate the severity of the pain and degree of functional limitations alleged by

the claimant. (Tr. 22).

At step four, the ALJ found that at all times relevant to the decision, Alexis K. had been

unable to perform any past relevant work. (Tr. 24). However, the ALJ found jobs that existed in

significant numbers in the national economy that Alexis K. could perform. (Tr. 24-25).

Therefore, the ALJ found that Alexis K. had not been under a disability, as defined in the Social

Security Act, from May 19, 2018, through the date of the ALJ's decision. (Tr. 25).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within

the meaning of the Social Security Act is limited to a determination of whether those findings are

supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of

Social Security, as to any fact, if supported by substantial evidence, shall be conclusive.");

*Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097

(7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the

correct legal standards and supported her decision with substantial evidence."). Courts have

defined substantial evidence as "such relevant evidence as a reasonable mind might accept to

3

support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28

L. Ed. 2d 852 (1972) (quoting ***Consol. Edison Co. v. NLRB***, 305 U.S. 197, 229, 59 S. Ct. 206,

217, 83 L. Ed. 2d 140 (1938)); *see **Bates***, 736 F.3d at 1098.  A court must affirm an ALJ's

decision if the ALJ supported his findings with substantial evidence and if there have been no

errors of law.  ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted).  However,

"the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues."

***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish

"disability" under the terms of the Social Security Act.  The claimant must show that she is

unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." **42 U.S.C.**

**§ 423(d)(1)(A)**.  The Social Security regulations enumerate the five-step sequential evaluation to

be followed when determining whether a claimant has met the burden of establishing disability.

**20 C.F.R. §§ 404.1520, 416.920**.  The ALJ first considers whether the claimant is presently

employed and "doing . . .  substantial gainful activity."  **20 C.F.R. §§ 404.1520(b), 416.920(b)**.

If she is, the claimant is not disabled, and the evaluation process is over.  If she is not, the ALJ

next addresses whether the claimant has a severe impairment or combination of impairments that

"significantly limits . . . physical or mental ability to do basic work activities."  **20 C.F.R. §§**

**404.1520(c), 416.920(c)**; *see **Williams v. Colvin***, 757 F.3d 610, 613 (7th Cir. 2014) (discussing

that the ALJ must consider the combined effects of the claimant's impairments).  Third, the ALJ

determines whether that severe impairment meets any of the impairments listed in the

regulations.  **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**.  If it does, then the impairment is

acknowledged by the Commissioner to be conclusively disabling.  However, if the impairment

does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual

functional capacity" and the physical and mental demands of her past work.  If, at this fourth

step, the claimant can perform her past relevant work, she will be found not disabled.  **20 C.F.R.**

**§§ 404.1520(e), 416.920(e)**.  However, if the claimant shows that her impairment is so severe

that she is unable to engage in her past relevant work, then the burden of proof shifts to the

Commissioner to establish that the claimant, in light of her age, education, job experience, and

functional capacity to work, is capable of performing other work and that such work exists in the

national economy.  **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f);** *see Biestek v.*

*Berryhill,* 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational

expert's refusal to provide the private market-survey data underlying her opinion regarding job

availability does not categorically preclude the expert's testimony from counting as "substantial

evidence" but, instead, the inquiry is case-by-case).

Alexis K. has requested that the court remand this matter for additional proceedings.  In

her appeal, Alexis K. has offered four arguments in favor of remand. Alexis K. alleges that the

ALJ erred in evaluating medical opinion evidence, the ALJ erred in the RFC determination, the

ALJ erred in evaluating Alexis K.'s subjective symptoms, and that the ALJ's appointment was

unconstitutional and violated the separation of powers.

Of the four arguments, the court finds it necessary to address only the third.   An ALJ's

evaluation of subjective symptoms will be upheld unless it is patently wrong.  ***Shideler v. Astrue***,

688 F.3d 306, 310-11 (7th Cir. 2012).  Nevertheless, an ALJ must explain her evaluation with

specific reasons that are supported by the record.  ***Pepper v. Colvin***, 712 F.3d 351, 367 (7th Cir.

2013).  Under SSR 16-3p, 2016 SSR LEXIS 4, an ALJ must assess the claimant's subjective

symptoms rather than assessing her "credibility."

The ALJ first must determine whether the claimant has a medically determinable impairment that reasonably could be expected to produce her symptoms.  SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029, at *2.  Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities."  SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029, at *2.  An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence.  SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029 at *5.  In determining the ability of the claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding.  SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029, at *4, 9.  The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(i)     The individual's daily activities;
(ii)    Location, duration, frequency, and intensity of pain or other symptoms;
(iii)   Precipitating and aggravating factors;
(iv)    Type, dosage, effectiveness, and side effects of any medication;
(v)     Treatment, other than medication, for relief of pain or other symptoms;
(vi)    Other measures taken to relieve pain or other symptoms;
(vii)   Other factors concerning functional limitations due to pain or other symptoms.

*See* **20 C.F.R. §404.1529(c)(3).**

The ALJ must justify her assessment with "specific reasons supported by the record." ***Pepper v. Colvin***, 712 F.3d 351, 367 (7th Cir. 2013).  Moreover, "the ALJ must explain her [subjective symptoms evaluation] in such a way that allows [the Court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the

6

evidence in the record." ***Murphy v. Colvin***, 759 F.3d 811, 816 (7th Cir. 2014); *see* SSR 16-30,

2016 SSR LEXIS 4, 2017 WL 5180304, at *10 (Oct. 25, 2017) (The ALJ's decision "must

contain specific reasons for the weight given to the individual's symptoms, be consistent with

and supported by the evidence, and be clearly articulated so the individual and any subsequent

reviewer can assess how the adjudicator evaluated the individual's symptoms.").  "[T]he absence

of objective medical corroboration for a complainant's subjective accounts of pain does not

permit an ALJ to disregard those accounts." ***Ghiselli v. Colvin***, 837 F.3d 771, 777 (7th Cir.

2016); *see also* ***Moore v. Colvin***, 743 F.3d 1118, 1125 (7th Cir. 2014) ("[T]he ALJ erred in

rejecting [the plaintiff]'s testimony on the basis that it cannot be objectively verified with any

reasonable degree of certainty.  An ALJ must consider subjective complaints of pain if a

claimant has established a medically determined impairment that could reasonably be expected

to produce the pain").

Alexis K. argues that the ALJ improperly relied on her activities of daily living to find

that her subjective symptoms were not as limiting as she claimed.  The ALJ found that Alexis

K.'s ability to "perform some of the household chores," specifically, cooking simple meals and

doing laundry, indicated that her symptoms were not as severe as she alleged.  (Tr. 22).  The ALJ

also relied on Alexis K.'s ability to "[spend] time with her friends on good days" to substantiate

her finding.  (Tr. 22).

The ALJ may take activities of daily living into account when evaluating a claimant's

subjective symptoms.  **20 C.F.R. § 404.1529**.  However, the ALJ must recognize the difference

between the ability to complete activities of daily living and the ability to work full-time.

***Bjornson v. Astrue***, 671 F.3d 640, 647 (7th Cir. 2012).  An individual's "ability to perform daily

activities, especially if they can be done only with significant limitations, does not necessarily

translate into an ability to work full-time." ***Roddy v. Astrue***, 705 F.3d 631, 639 (7th Cir. 2013).

Here, the ALJ failed to consider the manner in which Alexis K. performed daily activities and improperly relied on her ability to perform a few small tasks in finding that her symptoms were less limiting than she alleged. Alexis K. completed two function reports, one dated November 7, 2018, and one dated February 14, 2019. (Tr. 311, 339). In the November 2018 report, Alexis K. reported that she could make herself sandwiches, ramen, and that she prepared breakfast for herself daily, a bowl of cereal, while her family cooked the other meals. (Tr. 313). By February 2019, Alexis K. reported that she could get herself food, but it had to be food that was already prepared. (Tr. 339). For example, she could get herself fruit, granola bars, cereal, and ensure shakes. (Tr. 341).

The ALJ's finding that Alexis K. "indicated that she cooked simple meals on a daily basis" was a gross mischaracterization of the evidence in the November 2018 report, and it completely ignored the change in limitations by the February 2019 report. (Tr. 22, 311-13, 339-41). The November 2018 report that stated that she could prepare herself a bowl of cereal daily, but that her family prepared the majority of the rest of her meals, contradicts the ALJ's finding that she could prepare simple meals daily. (Tr. 311-13). Her mother confirmed in her third-party function report that Alexis K. "d[id] not cook meals" but was capable of grabbing prepared snacks and getting herself cereal. (Tr. 333). Moreover, by February 2019, Alexis K. indicated that she needed access to prepared foods in order to feed herself. (Tr. 339-41). The ALJ cited to that function report, but completely ignored the evidence and statements contained within it. (Tr. 22).

The ALJ also mischaracterized the evidence in the record by indicating that Alexis K. could perform household chores such as laundry. (Tr. 22). The ALJ stated that Alexis K.

testified to being able to perform "some of the household chores," such as laundry.  (Tr. 22).  At the hearing, Alexis K. testified that she tried to do her own laundry, and that she could put her clothes into the washer but could not get them out and move them from the washer to the dryer. (Tr. 45).  She testified that she could not reach into the washer, so she had to "toss" her clothes into the washer.  (Tr. 45).  She also stated that she could only do her laundry for 15 minutes "sometimes once a week."  (Tr. 333).  The November 2018 report and Alexis K.'s mother's report confirmed that. (Tr. 313, 333).  In the February 2019 report, she again stated that she could do laundry for 10 minutes every one to two weeks but needed assistance to get the clothes out of the washer or carry the basket of clean clothes.  (Tr. 341).

The ALJ mischaracterized Alexis K.'s ability to do laundry by failing to consider the assistance she required and the minimal the amount of time she actually spent doing laundry each week.  Alexis K. repeatedly stated that although she tried to help with laundry, she only could put her clothes in the washer and required assistance to transfer the clothes and carry the laundry basket.  Her statements regarding her ability to help with laundry were consistent with her complaints of pain and limited range of movement.

As described above, the ALJ mischaracterized the evidence of Alexis K.'s daily activities in relying on them to find that her subjective symptoms were less severe than she alleged.  The ALJ also improperly relied on a note that her MPS IV was "stable" and that she "admit[ted] that she t[ook] only Tylenol for pain."  (Tr. 22).  As stated in the record, MPS VI is a progressive illness that can worsen with age.  (Tr. 1184).  Although enzyme replacement therapy can slow the progression of multiple symptoms, evidence showed that other symptoms continued to

progress, regardless of treatment.[2]  Therefore, stability on enzyme replacement therapy did not necessarily mean that prior disease progression had improved, nor did it mean all of her symptoms had ceased to progress or continue.  The ALJ failed to consider both the disease progression of MPS VI and the efficacy of enzyme replacement treatment in finding that stability of MPS VI indicated that her symptoms were not as severe as she alleged.  Moreover, the treatment notes the ALJ cited to did not indicate stability with regards to her complaints of pain and limited range of movement.  (Tr. 1189-97, 1327-33).  While her cardiac impairment was found to be stable, her physician noted that she "continue[d] to have quite a bit of pain in her hips."  (Tr. 1190).  Additionally, at a genetics follow-up appointment, the physician noted that Alexis K.'s chronic pain in her hips and knees had increased and that she was experiencing reduced endurance and increased shortness of breath on exertion.  (Tr. 1327).  Her carpal tunnel was also noted to have worsened compared to her pre-operative imaging, and she was recommended for surgery, despite retaining "good hand function."  (Tr. 1328).  Also at that visit, it was recommended that she transition to an adult orthopedic surgeon due to her increased pain in her hips and knees.  (Tr. 1328).  The only medical note that indicated that her MPS VI was "generally stable on [enzyme replacement therapy]," also noted increased pain in her hips and knees, diminished vision, and a decrease in exercise tolerance.  (Tr. 1331).

The ALJ mischaracterized the evidence in finding that Alexis K.'s condition was stable. The geneticist specifically noted that the stability included increasing pain and decreasing vision. (Tr. 1331).  Alexis K.'s physicians and cardiologist, while finding her condition "stable," also supported her subjective statements by noting disease progression related to pain, decreased

[2] D'Avanzo, Francesca, et al. "Mucopolysaccharidosis Type VI, an Updated Overview of the Disease." International Journal of Molecular Sciences, vol. 22, no. 24, 2021, p. 13456., https://doi.org/10.3390/ijms222413456. Accessed 17 June 2022.

vision, and decreased exercise tolerance.  (Tr. 1190, 1331).

Additionally, the ALJ relied on physical therapy notes to find that her range of motion, strength, and gait improved, and that those improvements increased her ability vacuum and sweep.  (Tr. 1286-87).  While the physical therapy notes indicated that Alexis K. showed some improvement that increased her ability to perform vacuuming and sweeping, they also stated that she continued to present with impairments involving her range of motion, strength, posture, gait, pain, weight bearing, and joint mobility.  (Tr. 1286).  The physical therapist noted that those continued deficits limited Alexis K.'s ability to ascend stairs, lift 20 pounds from the floor, exercise, stand for more than 30 minutes, walk for 60 minutes, and walk on uneven surfaces. (Tr. 1286).  The initial evaluation was on May 3, 2018, and the therapist notes were from June 21, 2018.  (Tr. 1286).

Over the course of less than two months of physical therapy, she showed some improvements in range of motion in her hips but did not meet her short-term treatment goal for her range of motion.  (Tr. 1286-87).  Her short-term goal was set to be met by three weeks into therapy, and none of them were met during that time.  (Tr. 1286-87).  She also had four long term goals to be met by June 14, 2018.  (Tr. 1287).  By June 21, 2018, she had met only two of her four short term goals.  (Tr. 1287).  The ALJ relied on the indications of improvement but failed to acknowledge the portions of the physical therapy records that indicated continued pain, limited range of motion, and failure to meet short-term goals.  Therefore, the ALJ engaged in cherry-picking only the evidence that supported her finding. An ALJ "cannot simply cherry-pick facts surrounding a finding of non-disability while ignoring evidence that points to a disability finding."  *Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020) (finding that the claimant cannot "prevail by arguing that the ALJ improperly weighed the evidence" but can prevail if the "ALJ

overlooked entire swaths of it").

Alexis K. makes other arguments regarding medical opinion evidence, limitations in the RFC, and the constitutionality of the ALJ's appointment. However, because the ALJ erred in analyzing her subjective symptoms by mischaracterizing and cherry-picking evidence, the court need not address the additional arguments at this time. The ALJ's failure to properly analyze Alexis K.'s subjective symptoms may alter the view of the RFC, medical opinions, and other medical opinion evidence. Furthermore, remanding this case will cure any alleged defects in the constitutionality of the authority wielded by the ALJ under a Commissioner occupying an office with an unconstitutional removal clause. The ALJ will have the opportunity to revisit these issues on remand.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED**.

ENTERED this 5th day of July, 2022.

/s/ Andrew P. Rodovich
United States Magistrate Judge